DMB:JJT:nz

## UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JORGE ECHAVERRIA-TORO,                    :
                                          :
                    Petitioner,           :        No. 1:CV-00-1292
                                          :
          v.                              :        (KANE, J.)
                                          :
JANET RENO, ET AL.,                       :
                                          :
                    Respondents.          :  PRSLC  Schimelfenig

### RESPONSE TO HABEAS CORPUS PETITION

> FILED
> AUG 2 2 2000
> PER _____
> HARRISBURG, PA.    DEPUTY CLERK

     This is a habeas petition brought under 28 U.S.C. § 2241 by
Jorge Echavarria-Toro ("Petitioner"), a citizen of Columbia.
Petitioner has been charged by the INS as being removable for
having been convicted of trafficking in cocaine.  As a convicted
aggravated felon, the INS is detaining Petitioner, as required by
law, 8 U.S.C. § 1226(c), pending resolution of the removal
proceedings.

     On July 21, 2000, Petitioner filed this habeas petition to
challenge his detention during the removal process.  This Court
has directed the respondents [hereinafter "the INS"] to respond
to the habeas petition.

### Statement of the Case

     Petitioner is a citizen of Columbia.  In October 1977,
Petitioner entered the United States as an Immigrant.  Exhibit 1.
(Notice to Appear).

In late 1997, Petitioner was convicted in the Superior Court, County of New Castle, State of Delaware, of the offenses of trafficking in cocaine and possession with the intent to distribute cocaine, in violation of Title 16, Delaware Code, §§ 4753A(a)(2)(a) and 4751. See Criminal Records, Exhibit 2.

In August 1997, the INS initiated removal proceedings against petitioner. Because of his conviction for trafficking in cocaine, petitioner is removable pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) and § 1227(a)(2)(B)(i), and is ineligible for discretionary relief. Exh. 1. Additionally, the law mandates that petitioner, as a criminal alien, be detained pending his removal proceedings. 8 U.S.C. § 1226(c).

On July 21, 2000, petitioner filed a habeas petition challenging his detention pending the removal proceedings as unconstitutional.

## Question Presented

In that the Supreme Court has held that detention is part of the deportation process, in that deportation is a plenary power exercised by Congress and the executive branch, in that detention rationally furthers a number of legitimate government interests, and in that an alien's detention during removal proceedings is not indefinite, is the mandatory detention provisions of 8 U.S.C. § 1226(c) governing criminal aliens constitutional?

## Argument

**IN THAT THE SUPREME COURT HAS HELD THAT DETENTION IS PART OF THE DEPORTATION PROCESS, IN THAT DEPORTATION IS A PLENARY POWER EXERCISED BY CONGRESS AND THE EXECUTIVE**

**BRANCH, IN THAT DETENTION RATIONALLY FURTHERS A NUMBER OF LEGITIMATE GOVERNMENT INTERESTS, AND IN THAT DETENTION DURING REMOVAL PROCEEDINGS IS NOT INDEFINITE, THE MANDATORY DETENTION PROVISIONS OF 8 U.S.C. § 1226(C) GOVERNING CRIMINAL ALIENS ARE CONSTITUTIONAL AND DO NOT VIOLATE DUE PROCESS.**

The Seventh Circuit in Parra v. Perryman, 172 F.3d 954 (7th Cir. 1999), was the first appellate court to consider and uphold the constitutionality of mandatory detention pending proceedings for criminal aliens under section 236(c) of the INA, 8 U.S.C. § 1226(c). Subsequently, the majority of courts that have addressed the issue have reached the same result. See Richardson v. Reno, 162 F.3d 1338, 1364 n.119 (11th Cir. 1998), vacated on other grounds, 119 S. Ct. 2016 (1999); Avramenkov v. I.N.S., 99 F. Supp. 2d 210 (D. Conn. 2000); Okeke v. Pasquarell, 80 F. Supp. 2d 635, 637-38 (W.D. Tex. 1999); Reyes v. Underdown, 73 F. Supp. 2d 653, 657-58 (W.D. La. 1999); Jacques v. Reno, 73 F. Supp. 2d 477, 483 (M.D. Pa. 1999); Sierra-Tapia v. Reno, 1999 WL 803898 (S.D. Cal. Sept. 30, 1999) (Exhibit 3); Alikhani v. Fasano, 70 F. Supp. 2d 1124 (S.D. Cal. 1999); Edwards v. Blackman, 48 F. Supp. 2d 477, 480 (M.D. Pa. 1999), vacated on other grounds; Galvez v. Lewis, 56 F. Supp. 2d 637 (E.D. Va. 1999); Diaz-Zaldierna v. Fasano, 43 F. Supp. 2d 1114 (S.D. Cal. 1999); Bouayad v. Holmes, 74 F. Supp. 2d 471 (E.D. Pa. 1999). As explained below, this Court likewise should uphold the constitutionality of § 1226(c).

## A.    The Purpose of Mandatory Detention.

Mandatory detention cannot be viewed in a vacuum.  Rather, detaining criminal aliens is part of a removal process, not an end result.  Section 1226(c) is but one of several pieces of legislation collectively designed to accelerate the removal process for criminal aliens.

In 1996, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) to establish a framework to effect a net increase in removal orders entered against criminal aliens.  Through IIRIRA's provisions, Congress not only mandated the detention of criminals pending removal proceedings, but also took away the Attorney General's discretionary authority to forgo the removal of aggravated felons, eliminated judicial review, and set a 90-day time limit by way of instruction to INS for physical removal after a final order is entered.  See 8 U.S.C. §§ 1101(f)(3) and (8), 1158(b)(2)(B), 1226(c) and (e), 1229b(a)(3), (b)(1)(B), (C), (2)(C), (D), 1229c(a)(1), 1231(a), (b)(1)(A), (C), 1231(a)(2), 1252(a)(2)(C) (Supp. III 1998).

In enacting these provisions, Congress implicitly recognized that the curtailment of individual liberty interests was necessary to effect a net increase in removal orders against criminal aliens.  That is, while the IIRIRA demands the detention of all criminal aliens from start to finish of the administrative removal process without an individual assessment on dangerousness and flight risk, it does so based on the theory that such

-4-

limitation is necessary to ensure a more effective and credible removal process generally.  <u>See</u> H.R. Rep. No. 104-469(I) (1996), <u>available in</u> 1996 WL 168955; 142 Cong. Rec. S3329, 1996 WL 174902 (daily ed. Apr. 15, 1996)(statement of Sen. Abraham)("These provisions <u>collectively</u> will allow us to dramatically increase the number of criminal aliens who are deported.")(emphasis added).

B.    <u>The Plenary Power Doctrine for All Immigration Matters</u>.

The principle of judicial deference to legislative choices is magnified in the immigration context.  <u>See</u> <u>Fiallo v. Bell</u>, 430 U.S. 787, 792 (1977).  <u>Fiallo</u>'s deferential approach to questions of immigration and nationality is tied to Congress' constitutional authority and inherent sovereign powers.  Because the responsibility for formulating immigration policies is "exclusively entrusted to the political branches of government," such policy choices are "largely immune from judicial inquiry or interference."  <u>Harisiades v. Shaughnessy</u>, 342 U.S. 580, 589 (1952).

This basis for judicial caution applies with equal force in the immigration detention context.  The power to detain **is** part and parcel of the power to remove; otherwise, "[p]roceedings to exclude or expel would be vain."  <u>Wong Wing v. United States</u>, 163 U.S. 228, 234 (1896).  <u>See also</u> <u>Carlson v. Landon</u>, 342 U.S. 524, 538 (1952)("Detention is necessarily a part of this deportation procedure.  Otherwise, aliens arrested for deportation would have

-5-

opportunities to hurt the United States during the pendency of deportation proceedings.").

Without doubt, it is decidedly the province of the legislature to weigh and balance the costs of the immigration detention policy with the enforcement interests and the alien's liberty interests.  The plenary power doctrine constrains judicial inquiry into Congress' balancing of individual and government interests, and the courts must accord great deference to Congress' determination of what process is due.  See Weiss v. United States, 510 U.S. 163, 176-77 (1994).  This is a critical aspect of the plenary power doctrine.  The courts should not revisit the wisdom of either Congress' desire to effect a systemic change, or to curtail the liberty interests of criminal aliens pending proceedings.  The very fact that Congress enacted the statute demonstrates that it concluded that other policy concerns outweighed those concerns articulated by the critics.

The INS does not dispute that §1226(c) is subject to some level of substantive due process review.[1]  See Bell, 430 U.S. at 793 n.5 (1977).  Because of the "plenary powers" doctrine, however, the proper standard of review here is a deferential

---

[1]  In Section 1226(c) cases, the administrative agency has the jurisdiction, pursuant to 8 C.F.R. § 3.19(h)(2)(ii)(1999), to determine whether the alien in custody actually falls within a category of criminal aliens subject to interlocutory detention pending removal proceedings.  See Matter of Joseph, Int. Dec. 3398, 1999 WL 339053 (BIA 1999)(Exhibit 4).  If the alien does fall within the interlocutory detention provision, then there is no authority to entertain a request for release on bond (unless the alien is eligible for Witness Protection Program benefits). Id.

rational-relation standard, under which §1226(c) is constitutional so long as it is "rationally" related to a "legitimate" government interest. See <u>Reno v. Flores</u>, 507 U.S. 292, 300-01, 306 (1993); <u>Landon</u>, 342 U.S. at 540-41 (1952) (upholding INS detention that was not clearly "without reasonable foundation").

### C.    <u>The Individual's Right To Liberty</u>.

The characterization of the liberty interest at stake is another important aspect of the detention litigation.  Courts are required to adhere to the prudent course of looking to the concrete facts of a case to determine what right is at issue. See <u>Washington v. Glucksberg</u>, 521 U.S. 702, 722-24 (1997).

Moreover, we emphasize that an individual's rights to liberty pending criminal trial and pending removal proceedings are **not** comparable.  "A person arrested on a preliminary warrant [of deportation] is <u>not</u> protected by the presumption of citizenship comparable to the presumption of innocence in a criminal case." <u>INS v. Lopez-Mendoza</u>, 468 U.S. 1032, 1043 (1984).  The absence of a presumption of innocence affects the constitutionality of immigration detention because the motivating concern for limiting the length of pretrial detention in a criminal case is that presumption of innocence.

Aliens (and courts) often confuse the question of what process is due with the question of whether a protectable liberty interest exists.  The interest of the alien at stake in §1226(c)

-7-

cases is a non-fundamental interest in being released pending proceedings, not in an individualized hearing on the question of whether he will be released.  As the Second, Fifth, and Seventh Circuit Courts have recognized, a deportable alien does not possess the same "liberty" as a citizen.  See Zadyvdas v. Anderdown, 185 F.3d 279, 289 (5th Cir. 1999); Parra, 172 F.3d at 958; Doherty v. Thornburgh, 943 F.2d 204, 209-10 (2d Cir. 1991).  In a certain sense, deportable criminal aliens in removal proceedings possess no "right to come and go at will."  See Reno, 507 U.S. at 302.  The reason is two-fold: (1) release on bond has always been a privilege and never a matter of right or entitlement and (2) aliens are subject to the will of Congress when it comes to matters associated with their continued presence within our society.  See Id., 507 U.S. at 305-06; Harisiades, 342 U.S. at 586-87.

Consequently, although a criminal alien's physical freedom is being infringed temporarily during his removal proceedings, he has not been unlawfully deprived of any "fundamental liberty interest" in the constitutional sense.  See Parra, 172 F.3d at 958; see also Reno, 507 U.S. at 306, Carlson, 342 U.S. at 537, 540-41; Doherty, 943 F.2d at 208-11.  As the Seventh Circuit explained, the private interest implicated by § 1226(c)'s detention requirement "is not liberty in the abstract, but liberty in the United States by someone no longer entitled to remain in this country."  Parra, 172 F.3d at 958.  Because §

-8-

1226(c) does not implicate a fundamental right, the scope of review is rational basis review.  See Reno, 507 U.S. at 306.

## D.   Section 1226(c) is Constitutional.

Section 1226(c) is a reasonable exercise of congressional power as it clearly furthers a legitimate governmental purpose. The legislative history reveals that there were several legitimate purposes underlying § 1226(c): (1) to prevent criminal aliens from absconding so they could be removed as required by law; (2) to protect public safety from the presence of potentially dangerous criminal aliens; (3) to correct the failure of prior bond proceedings where criminal aliens absconded, and (4) to repair the serious damage to the American immigration system caused by the Government's inability to detain criminal aliens pending deportation and to remove them promptly.  See S. Rep. No. 48, 104th Cong., 1st Sess. (1995), 1995 WL 170285 (Leg. Hist.) at 1-6, 9, 18-23.

The statute seeks to prevent clearly deportable criminal aliens with no realistic hope of relief from removal from absconding or committing further criminal acts during proceedings to effect their removal.[2]  Preventing danger to the community and flight have long been considered legitimate regulatory goals.

---

[2]     Under the Immigration and Naturalization Act, as amended by AEDPA and then IIRIRA, criminal aliens like petitioner must be removed from the United States.  Such aliens have no right to discretionary relief from deportation. Avrammenkov, 99 F. Supp. 2d at 211.  Thus, particularly as in petitioner's case, the alien has no hope in remaining in the United States.

See, e.g., U.S. v. Salerno, 481 U.S. 739, 748-49; Schall v. Martin, 467 U.S. 253, 251 (1984); Bell v. Wolfish, 441 U.S. 520 (1979); Carlson, 342 U.S. at 534.  These goals have been paramount among the immigration enforcement concerns of Congress and the Attorney General over the past decade, with mounting emphasis in the past three years as the problems of widespread recidivism and abscondment have come increasingly to light.

A 1995 report of the Senate Governmental Affairs Committee observed that "[i]n New York, for example, in fiscal year 1993, out of 1695 [orders to surrender for deportation] sent to criminal and non-criminal aliens, 1486, or 87.7 percent failed to surrender.  Also, in New York, there were $2.4 million in bonds breached in fiscal year 1993.").  S. Rep. No. 104-48, 1995 WL 170285 (Apr. 7, 1995)(emphasis added); see also Id. ("Through 1992, nearly 11,000 criminal aliens convicted of aggravated felonies (which are particularly serious crimes) failed to appear for deportation hearings. . . .")(emphasis added).

There can be no question that removing deportable criminal aliens from the United States, and preventing them from absconding or committing further crimes in the process, are legitimate and reasonable goals.  See, e.g., Salerno, 481 U.S. at 747; Bell v. Wolfish, 441 U.S. 520.  Nor is there any doubt, in light of the disturbing rates of abscondment and recidivism discussed above, that the detention requirement rationally advances these objectives, or that a rational relationship exists between the "aggravated felon" classification and danger to the

community and flight risk.  Hence, § 1226(c)(2) rests on a legitimate basis, and petitioner's substantive due process challenge must fail.  See Reno, 507 U.S. at 306; Fiallo, 430 U.S. at 794-95; Avrammenkov, 99 F. Supp. 2d 215.

Section 1226(c) also does not violate petitioner's procedural due process rights.  In assessing the legitimacy of any procedural due process claim, great judicial deference should be given to Congress' determination of what process is due.  See Weiss v. U.S., 510 U.S. 163, 176-77.  The due process analysis set out in Mathews v. Eldridge, 424 U.S. 319, (1976), requires the court "to evaluate the private interest, the probability of error (and the effect of additional safeguards on the rate of error), and the government's interest in dispensing with those safeguards, **with a thumb on the scale in favor of the statute's constitutionality**."  Parra, 172 F.3d at 958 (emphasis added).

As the Seventh Circuit correctly observed, criminal aliens covered by Section 1226(c) do not have any constitutional "right" or "liberty interest" in avoiding detention pending removal proceedings, because, by virtue of their criminal conduct and convictions, they have "forfeited any legal entitlement to remain in the United States."  See Parra, 172 F.3d at 958. Consequently, "[t]he private interest here is not liberty in the abstract, but [merely] liberty in the United States by someone who is no longer entitled to remain in this country."  Id.

The Parra court's reasoning applies in this case.  Because petitioner is properly in the INS' jurisdiction and does not

-11-

dispute the material facts underlying the criminal removal charges, the Court should significantly reduce the weight accorded his private interests in evaluating the due process claim.  See Parra, 172 F.3d at 958.

Moreover, on the weight of the Government's interest, the Court may not substitute its judgment for the informed decisions of Congress.  Cf. Weiss, 510 U.S. at 176-77.  Parra's reasoning is legally sound:

> The Supreme Court held in United States v. Salerno, 481 U.S. 739 (1987), that pretrial detention in criminal prosecutions (a parallel to pre-removal detention) comports with the Constitution even though the private interest is greater, the likelihood of error must be deemed significant given the prosecutor's high burden at a criminal trial, and the public interest is less (for the skip rate on bond in criminal prosecutions is well under 90%).  Given the sweeping powers Congress possesses to prescribe the treatment of aliens, see Fiallo v. Bell, 430 U.S. 787, 792 (1977), the constitutionality of § 1226(c) is ordained.

Parra, 172 F.3d at 958.  For these reasons, the Court should conclude that § 1226(c) does not violate petitioner's procedural due process rights.

As one court recently recognized, petitioner is almost certainly going to be removed as an aggravated felon such that he has no significant liberty interest implicated by §1226(c).  The United States, on the other hand, has a substantial interest in avoiding individualized bond hearings for individuals Congress has already determined pose a significant risk of flight and/or threat to the community.  As such, there is no procedural due process violation.  Avramenkov, 99 F. Supp. 2d at 215 (citing

-12-

Eldridge, 424 U.S. at 334-36).  See also text supra at 3-4
(collecting cases).[3]

### Conclusion

For the above-stated reasons, Petitioner's habeas petition
should be denied.

Respectfully submitted,

DAVID M. BARASCH
United States Attorney

JOSEPH J. TERZ
Assistant U.S. Attorney
228 Walnut Street, Suite 220
P.O. Box 11754
Harrisburg, PA  17108-1754
(717) 221-4482

Date:  August 22, 2000

---

[3]    We also note that petitioner's detention is not
indefinite.  Moreover, in that petitioner clearly was found
guilty of an aggravated felony and is not entitled to any
discretionary relief, he effectively holds the keys to his
confinement by conceding removal.

DMB:JJT:nz

## UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JORGE ECHAVERRIA-TORO,        :
                                  :
                Petitioner,    :    No. 1:CV-00-1292
        v.                 :
                                    :    (KANE, J.)
JANET RENO, ET AL.,          :
                                  :
                Respondents.   :

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.

That on this 22nd day of August, 2000, she served a copy of the attached

### RESPONSE TO HABEAS CORPUS PETITION

by placing said copy in a postpaid envelope addressed to the person hereinafter named, at the places and addresses stated below, which is the last known addresses, and by depositing said envelope and contents in the United States Mail in Harrisburg, Pennsylvania.

Addressee:

      Jorge Echavarria-Toro, No. 58600
      YORK COUNTY PRISON
      3400 Concord Road
      York, Pennsylvania  17402

      Naomi Zimmerman
      Legal Secretary

N:\udd\nzimmer\terz\INS\Toro habeas.res.wpd