DMB:JJT:nz

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JORGE ECHAVERRIA-TORO,        :

             Petitioner,    :    No. 1:CV-00-1292

       v.        :

                               :    (KANE, J.)

JANET RENO, <u>ET AL.</u>,      :

           Respondents.   :



<u>EXHIBITS IN SUPPORT OF
RESPONSE TO HABEAS CORPUS PETITION</u>

DAVID M. BARASCH
United States Attorney


JOSEPH J. TERZ
Assistant U.S. Attorney
228 Walnut Street, Suite 220
P.O. Box 11754
Harrisburg, PA 17108-1754
717/221-4482

**Date:** August 22, 2000

<u>**I N D E X**</u>

| <u>**Exhibit**</u> | <u>**Exhibit No.**</u> |
|---|---|

Notice to Appear  . . . . . . . . . . . . . . . . . . . 1

Criminal Records  . . . . . . . . . . . . . . . . . . . 2

<u>Sierra-Tapia v. Reno</u>,
1999 WL 803898 (S.D. Cal. Sept. 30, 1999) . . . . . . . . . . 3

<u>Matter of Joseph</u>,
Int. Dec. 3398, 1999 WL 339053 (BIA 1999) . . . . . . . . . . 4

U.S. Department of Justice
Immigration and Naturalization Service

 

# Notice to Appear

### In removal proceedings under section 240 of the Immigration and Nationality Act

File No: A36 145 568

In the Matter of:

Respondent: Jorge          Eduardo          ECHAVARRIA-TORO

c/o Warden, Gander Hill Prison, 1301 East 12th Street
Wilmington                                          DE        19802        York
_(Number, street, city, state and ZIP code)_                              _(Area code and phone number)_

- ☐ 1. You are an arriving alien.
- ☐ 2. You are an alien present in the United States who has not been admitted or paroled.
- ☒ 3. You have been admitted to the United States, but are deportable for the reasons stated below.

The Service alleges that you:

1. You are not a citizen or national of the United States.

2. You are a native of Colombia and a citizen of Colombia.

3. You last entered the United States on or about October 5, 1977, through the port of Miami, FL, as an immigrant.

4. You were, on March 3, 1997, convicted in the Superior Court, County of New Castle, State of Delaware, of the offenses of TRAFFICKING IN COCAINE and POSSESSION WITH INTENT TO DISTRIBUTE COCAINE, in violation of Title 16, Delaware Code, Sections 4753A(a)(2)(a) and 4751.

On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following provision(s) of law:

Section 237(a)(2)(A)(iii) of the of the Immigration and Nationality Act (Act), as amended, in that, at any time after admission, you have been convicted of an aggravated felony as defined in section 101(a)(43) of the Act.

Section 237(a)(2)(B)(i) of the of the Immigration and Nationality Act (Act), as amended, in that, at any time after admission, you have been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in Section 102 of the Controlled Substances Act, 21 U.S.C. 802), other than a single offense involving possession for one=s own use of 30 grams or less or marijuana.

- ☐ This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution.

- ☐ Section 235(b)(1) order  was vacated pursuant to:  ☐ 8 CFR 208.30(f)(2)   ☐ 8 CFR 235.3(b)(5)(iv)

YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at:
~~To be set~~  1600 Callonhill St ..
_(Complete Address of Immigration Court, Including Room Number, if any)_

on ____To be set____ at ____To be set____ to show why you should not be removed from the United States based on the
          _(Date)_              _(Time)_
charge(s) set forth above.

                                        Charles W. Zemski, ADDI
                                        _(Signature and Title of Issuing Officer)_

Date: _____08/13/97_____

                                        Philadelphia, PA
                                        _(City and State)_

### See reverse for important information

# SUPERIOR COURT
### OF THE
## STATE OF DELAWARE

**SHARON D. AGNEW**
PROTHONOTARY, NEW CASTLE COUNTY

DANIEL L. HERRMANN COURTHOUSE
1020 N. KING STREET
WILMINGTON, DE 19801
(302) 577-2400

## M E M O R A N D U M

TO: Charles Zemski

FROM: Prothonotary's Office

RE: State of Delaware vs. Jorge Echavarria

Case ID No. 9611003073

DATE: April 21, 1997          Defendant's letter received:

RECEIVED
MAY 02 1997
INVESTIGA...

___ 1.     In order to process your request, we need additional information on your case. Please Number or the correct Criminal Action Numbers. Your Case I.D. Numbers are available on your status sheet which may be obtained from the Department of Corrections Records Department.

X  2.     Enclosed please find the documents/information requested.

___ 3.     Your letter does not request any specific action or relief. We are therefor returning your letter to you.

___ 4.     Transcripts for Superior Court hearings should be requested from: Superior Court Reporters/Daniel L. Herrmann Courthouse/Ground Floor/1020 King Street/Wilmington, DE 19801. Transcripts for preliminary hearing should be requested from the reporter for the Court where the preliminary hearing was held (Court of Common Pleas or Municipal Court)

___ 5.     We have forwarded your letter to your attorney of record. Please send future correspondence to your attorney. Your attorney's name and address is:

a)_____    b) _____
Public Defenders's Office              _____
State Office Building                   _____
820 N. French Street                   _____
Wilmington, DE 19801

___ 6.     Our office is unable, by law, to render legal advice. Please contact your attorney or the Public Defender's Office (see address listed in # 5) for such aid.

___ 7.     By law, this office is not able to perform a criminal record search. Forward all such requests to: State of Delaware/Department of Public Safety/Division of State Police/P.O. Box 430/Dover, DE 19901.

___ 8.     Your document should be filed with the Kent County Prothonotary/38 The Green/ Dover, DE 19901. Please address your correspondence to that address.

___ 9.     Your document should be filed with the Sussex County Prothonotary/The Circle/Georgetown, DE 19947. Please address your correspondence to that address.

_____ **Continued on reverse side**

JAMES WOODS, on or about the 7th day of November, 1996, in the County of New Castle, State of Delaware, when intending to promote the commission of a felony, did agree with another unknown person to engage in conduct constituting the felony of Delivery of Cocaine and/or Maintianing a Vehicle and did commit an overt act in furtherance of said conspiracy, by committing same as set forth in Counts VIII and/or IX of this Indictment, incorporated herein by reference.

A TRUE BILL

_____
(FOREPERSON)

_____
ATTORNEY GENERAL

_____
DEPUTY ATTORNEY GENERAL

possess with intent to use drug paraphernalia to contain and/or inhale into the human body a controlled substance in violation of Chapter 47, Title 16 of the Delaware Code of 1974, as amended.

### COUNT VIII.   A FELONY

#N 96-12-0269

DELIVERY OF A NARCOTIC SCHEDULE II CONTROLLED SUBSTANCE in violation of Title 16, Section 4751 of the Delaware Code of 1974, as amended.

JAMES WOODS, on or about the 8th day of November, 1996, in the County of New Castle, State of Delaware, did knowingly and unlawfully deliver Cocaine, a Narcotic Schedule II Controlled Substance as classified under 16 Del. C. Section 4716(b)(4).

### COUNT IX.   A FELONY

#N 96-12-0271

USE OF A VEHICLE FOR KEEPING CONTROLLED SUBSTANCES in violation of Title 16, Section 4755(a)(5) of the Delaware Code of 1974, as amended.

JAMES WOODS, on or about the 7th day of November, 1996, in the County of New Castle, State of Delaware, did knowingly keep a vehicle, which is used for keeping controlled substances in violation of Chapter 47, Title 16 of the Delaware Code of 1974, as amended, as set forth in Count VIII of this Indictment.

### COUNT X.   A FELONY

#N 96-10-0272

CONSPIRACY SECOND DEGREE in violation of Title 11, Section 512 of the Delaware Code of 1974, as amended.

## COUNT V.  A FELONY

#N 96-11-1705

POSSESSION WITH INTENT TO DELIVER A NARCOTIC SCHEDULE II

CONTROLLED SUBSTANCE in violation of Title 16, Section 4751 of

the Delaware Code of 1974, as amended.

JORGE ECHAVARRIA, on or about the 7th day of November,

1996, in the County of New Castle, State of Delaware, did

knowingly and unlawfully possess Cocaine, a Narcotic Schedule

II Controlled Substance as classified under 16 Del. C. Section

4716(b)(4), with the intent to deliver same.

## COUNT VI.  A FELONY

#N 96-11-1706

USE OF A DWELLING FOR KEEPING CONTROLLED SUBSTANCES in

violation of Title 16, Section 4755(a)(5) of the Delaware Code

of 1974, as amended.

JORGE ECHAVARRIA, on or about the 7th day of November,

1996, in the County of New Castle, State of Delaware, did

knowingly keep a dwelling at 24 Bedford Drive, Wilmington,

Delaware which is used for keeping controlled substances in

violation of Chapter 47, Title 16 of the Delaware Code of

1974, as amended, as set forth in Counts IV and/or V of this

Indictment.

## COUNT VII.  A MISDEMEANOR

#N 96-11-1707

POSSESSION OF DRUG PARAPHERNALIA in violation of Title

16, Section 4771 of the Delaware Code of 1974, as amended.

JORGE ECHAVARRIA, on or about the 7th day of November,

1996, in the County of New Castle, State of Delaware, did

JORGE ECHAVARRIA AND JAMES WOODS, on or about the 7th day of November, 1996, in the County of New Castle, State of Delaware, did knowingly keep a vehicle, which is used for keeping controlled substances in violation of Chapter 47, Title 16 of the Delaware Code of 1974, as amended, as set forth in Count I of this Indictment.

<u>COUNT III.   A FELONY</u>

#N 96 - 12 - 0267
#N 96 - 12 - 0270

CONSPIRACY SECOND DEGREE in violation of Title 11, Section 512 of the Delaware Code of 1974, as amended.

JORGE ECHAVARRIA AND JAMES WOODS, on or about the 7th day of November, 1996, in the County of New Castle, State of Delaware, when intending to promote the commission of a felony, did agree with each other to engage in conduct constituting the felony of Delivery of Cocaine and/or Maintianing a Vehicle and did commit an overt act in furtherance of said conspiracy, by committing same as set forth in Counts I and/or II of this Indictment, incorporated herein by reference.

<u>COUNT IV.   A FELONY</u>

#N 96 - 11 - 1784

TRAFFICKING IN COCAINE in violation of Title 16, Section 4753A(a)(2)(a) of the Delaware Code of 1974, as amended.

JORGE ECHAVARRIA, on or about the 7th day of November, 1996, in the County of New Castle, State of Delaware, did knowingly possess more than 5 grams but less than 50 grams of a mixture containing Cocaine, as classified under 16 <u>Del</u>. <u>C</u>. Section 4716(b)(4).

51

RULE 9 SUMMONS---ECHAVARRIA

RULE 9 WARRANT---WOODS

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| THE STATE OF DELAWARE | : | |
| | : | |
| v. | : | INDICTMENT BY THE GRAND JURY |
| | : | |
| JORGE ECHAVARRIA | : | ID: #9611003073 |
| JAMES WOODS | : | ID: #9611015346 |

The Grand Jury charges JORGE ECHAVARRIA AND JAMES WOODS
with the following offenses;

COUNT I.    A FELONY

#N 96 - 12 - 0265
#N 96 - 12 - 0268

DELIVERY OF A NARCOTIC SCHEDULE II CONTROLLED SUBSTANCE in
violation of Title 16, Section 4751 of the Delaware Code of
1974, as amended.

JORGE ECHAVARRIA AND JAMES WOODS, on or about the 7th day
of November, 1996, in the County of New Castle, State of
Delaware, did knowingly and unlawfully deliver Cocaine, a
Narcotic Schedule II Controlled Substance as classified under
16 Del. C. Section 4716(b)(4).

COUNT II.    A FELONY

#N 96 - 12 - 0266
#N 96 - 12 - 0273

USE OF A VEHICLE FOR KEEPING CONTROLLED SUBSTANCES in
violation of Title 16, Section 4755(a)(5) of the Delaware Code
of 1974, as amended.

CERTIFIED AS A TRUE COPY:
SHARON AGNEW
NOTARY
BY William J. Mawdri

STATE OF DELAWARE V. JORGE E ECHAVARRIA,
9610021809 9611003073

FINANCIAL OBLIGATIONS ARE IMPOSED ON THE DEFENDANT PURSUANT TO THIS
SENTENCE AS FOLLOWS:

| | |
|---|---:|
| TOTAL CDEFA-DIVERSION ORDERED | 0.00 |
| TOTAL CIVIL PENALTY ORDERED | 0.00 |
| TOTAL COSTS ORDERED | 155.60 |
| TOTAL DRUG SURCHARGE ORDERED | 7500.00 |
| TOTAL FINE AMOUNT ORDERED | 0.00 |
| TOTAL FORENSIC FINE ORDERED | 0.00 |
| TOTAL SHERIFF KENT ORDERED | 0.00 |
| TOTAL SHERIFF NCC ORDERED | 0.00 |
| TOTAL PUBLIC DEF. FEE ORDERED | 0.00 |
| TOTAL RESTITUTION ORDERED | 0.00 |
| TOTAL SHERIFF SUSSEX ORDERED | 0.00 |
| TOTAL VICTIMS' COMP ORDERED | 9000.00 |
| TOTAL VIDEO PHONE FEE ORDERED | 0.00 |
| TOTAL FINANCIAL ORDER | 16655.60 |

FILED PROTHONOTARY
'97 MAR 10 P2:39

PAGE 004 OF 4

STATE OF DELAWARE V. JORGE E ECHAVARRIA,
9610021809 9611003073

THE FOLLOWING CONDITIONS SHALL APPLY TO THIS SENTENCE, THE
DEFENDANT SHALL:

N/A

JUDGE VINCENT A. BIFFERATO

STATE OF DELAWARE V. JORGE E ECHAVARRIA
9611003073

AS TO THE CHARGE OF IN96111705, PWITD NSII CS,
                                    COCAINE
IT IS THE ORDER OF THE COURT THAT:

      THE DEFENDANT IS ADJUDGED GUILTY OF THE OFFENSE
CHARGED.

      THE DEFENDANT IS TO PAY THE COST OF PROSECUTION.

      THE DEFENDANT IS PLACED IN THE CUSTODY OF THE DEPARTMENT OF
CORRECTION AT SUPERVISION LEVEL 5 FOR A PERIOD OF 3 YEARS.

      AFTER SERVING 1 YEAR AT SUPERVISION LEVEL 5, THIS SENTENCE IS
SUSPENDED FOR 2 YEARS AT SUPERVISION LEVEL 3. AFTER SERVING 1 YEAR
AT SUPERVISION LEVEL 3, THIS SENTENCE IS SUSPENDED FOR 1 YEAR AT
SUPERVISION LEVEL 2.


      THIS SENTENCE SHALL BE SERVED CONSECUTIVELY TO THE SENTENCE IN
CR.A. NO. IN96110713.

*TIS*

FILED PROTHONOTARY
'97 MAR 10 P2:38

9611009073

IN96111705

10

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

| DOC |
| BP |
| PP |
| PSI |
| CF |

STATE OF DELAWARE
        V.
JORGE E ECHAVARRIA

DOB: 08/25/70
SBI: 00270911

CASE NO. 9610021809
CR.A. NO. IN96110713

CHARGE: TRF.COC.5-50G

CHARGE DISP: PLED GUILTY

**TIS**

SENTENCE ORDER

**TRACK III**

NOW, THIS 3RD DAY OF MARCH, 1997, IT IS THE ORDER OF THE COURT THAT:

THE DEFENDANT IS ADJUDGED GUILTY OF THE OFFENSE CHARGED.

THE DEFENDANT IS TO PAY THE COST OF PROSECUTION.

THE DEFENDANT IS TO PAY A FINE IN THE AMOUNT OF $50000.00 PLUS AN EIGHTEEN PERCENT (18%) SURCHARGE FOR THE 'VICTIM COMPENSATION' FUND' AND A FIFTEEN PERCENT (15%) SURCHARGE FOR THE 'SUBSTANCE ABUSE REHABILITATION, TREATMENT, EDUCATION AND PREVENTION FUND.' FINES ARE HEREBY SUSPENDED.

EFFECTIVE NOVEMBER 7,1996, THE DEFENDANT IS PLACED IN THE CUSTODY OF THE DEPARTMENT OF CORRECTIONS AT SUPERVISION LEVEL 5 FOR A PERIOD OF 3 YEARS.

IF THE DEFENDANT IS PRESENTLY SERVING ANOTHER SENTENCE, THAT SENTENCE SHALL BE SUSPENDED UNTIL COMPLETION OF THIS SENTENCE.

CERTIFIED AS A TRUE COPY:
ATTEST: SHARON AGNEW
PROTHONOTARY
BY _William J. Nowak_

PAGE 001 OF 4

Office of The Prothonotary
Superior Court
Daniel L. Herrmann Court House
1020 N. King Street
Wilmington, DE 19801-3349
02-03-500
"Official Business, Penalty for Private Use $300."

U.S. DEPT. OF JUSTICE
IMMIGRATION & NATURALIZATION SERVICE
1600 CALLOWHILL St.
PHILADElphia, Pa 19130

1999 WL 803898

(Cite as: 1999 WL 803898 (S.D.Cal.))

▷

**Page 20**

Only the Westlaw citation is currently available.

United States District Court, S.D. California.

**Elena SIERRA-TAPIA, Petitioner,**

**v.**

**Janet RENO, Attorney General of the United States et al., Respondents.**

**No. 99-CV-986 TW(RBB).**

Sept. 30, 1999.

Jan Joseph Bejar, San Diego, California, for Petitioner.

Samuel W. Bettwy, United States Attorney, San Diego, California, for Respondent.

AMENDED ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; TERMINATING CASE

WHELAN, J.

I. Introduction

**\*1** On May 13, 1999 Petitioner Elena Sierra-Tapia ("Petitioner"), proceeding through counsel, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner is currently being detained by the Immigration and Naturalization Service ("INS") pursuant to the mandatory detention provision of Section 236(c) of the Immigration and Naturalization Act ("INA") [8 U.S.C. § 1226(c) ]. Petitioner seeks an order requiring the INS to discharge her from custody and to parole her into the United States during the pendency of her removal proceedings. For the reasons expressed herein, the court DENIES the petition.

II. Background [FN1]

> FN1. The facts set forth in these paragraphs are undisputed and are taken largely from the petition and from the exhibits attached to the Government's return. The court also takes judicial notice of the records in the criminal case involving Petitioner, United States v.. Sierra Tapia, No. 98-CR-1347 K(RBB) (S.D.Cal. Mar. 25, 1998).

Petitioner is a 49-year old native and citizen of Mexico who became a lawful permanent resident on June 20, 1990. At approximately 7:00 AM on March 25, 1998, Petitioner and her 10-year old daughter entered the United States from Mexico at the Tecate, California Port of Entry driving a 1977 Pontiac Ventura. Petitioner was the driver and her daughter the front-seat passenger of the vehicle.

While waiting at the primary checkpoint, a border patrol narcotics agent noticed that Petitioner appeared nervous and frightened. The officer referred the vehicle to secondary inspection where a search of the vehicle revealed 42.5 pounds of a green leafy substance that field tested positive for marijuana. Petitioner was taken into custody the same day and charged with two counts of knowingly and intentionally importing marijuana and possessing marijuana with intent to distribute. Petitioner was paroled into the United States during the pendency of her prosecution.

On October 6, 1998, a jury convicted Petitioner of both counts and the court sentenced her to a term of imprisonment. Petitioner was released on January 29, 1999 into the custody of the INS. The INS subsequently detained Petitioner and charged her with inadmissibility under INA § 212(a)(2)(A)(i)(II) [8 U.S.C. § 1182(a)(2)(A)(i)(II) ] on the basis of her controlled substance conviction.

The INS is currently detaining Petitioner without bond pursuant to the mandatory detention provisions of INA § 236(c) [8 U.S.C. § 1226(c) ]. Petitioner contends that her continued detention is unconstitutional and seeks an order requiring the INS to discharge her from custody pending the outcome of removal proceedings.

III. Subject Matter Jurisdiction

It is well-established that a federal court cannot reach the merits of any dispute until it confirms its own subject matter jurisdiction. Steel Co. v. Citizens for a Better Environ., 523 U .S. 83, ___, 118 S.Ct. 1003, 1013, 140 L.Ed.2d 210 (1998). "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Id. (quoting Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514, 19 L.Ed. 264 (1868)). Accordingly, federal courts are under a continuing duty to confirm their jurisdictional power and are "obliged to inquire sua sponte whenever a doubt arises as to [its] existence ..." Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 278, 97 S.Ct. 568, 571, 50 L.Ed.2d 471 (1977) (citations omitted).

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

*2 The INS commenced removal proceedings against petitioner on January 29, 1999. Judicial review is therefore governed by the permanent jurisdictional provisions of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104-132, 110 Stat. 3009-546 ("IIRIRA"); IIRIRA §§ 309(c)(1) & (a).

Respondent contends the court lacks jurisdiction to hear the writ pursuant to what the Supreme Court recently coined as "the unmistakable zipper clause" of INA § 242(b)(9) [8 U.S.C. § 1252(b)(9) ]. See Reno v. American-Arab Anti- Discrimination Committee, 525 U.S. 471, ____, 119 S.Ct. 936, 943, 142 L.Ed.2d 940 (1999) (dicta). That statute provides:

(9) Consolidation of questions for judicial review
Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.

8 U.S.C. § 1252(b)(9). This court had occasion to interpret this statute in Maldonado v. Fasano, No. 99-CV-880 TW, 1999 WL 343423 (S.D.Cal. May 21, 1999), where the court held that INA § 242(b)(9) eliminated § 2241 habeas corpus jurisdiction for resident aliens challenging final orders of removal. See id. at *4-5 (emphasis added). The court held that "[t]o the extent judicial review is available under the immigration statutes, or is compelled by the constitution, such review exists only in the court of appeals ." Id. at *5.

Maldonado did not address the specific issue now before the court-whether the permanent jurisdictional rules of INA § 242 repealed § 2241 habeas jurisdiction for aliens challenging detention pending removal. In dicta, the decision suggested that INA § 242(b)(9) "may divest federal courts of jurisdiction to review interim administrative determinations, such as agency actions concerning bail and parole," id. at *4, but did not have occasion to resolve the issue. In Richardson v. Reno, 180 F.3d 1311 (11th Cir.1999), the Eleventh Circuit recently resolved this question against jurisdiction, holding that INA § 242(b)(9) completely revoked district court § 2241 habeas jurisdiction for all challenges, including challenges to detention pending removal.

The court agrees with Richardson and with its

previous statements in Maldonado that the plain language of INA § 242(b)(9) divests district courts of § 2241 habeas jurisdiction over matters concerning executive detention. Finding that the statute applies, however, does not necessarily end the inquiry. With respect to congressional and executive control over immigration, the Supreme Court has stated:

The power to exclude aliens, being a power affecting international relations, is vested in the political departments of the government, and is to be regulated by treaty or by act of Congress and to be executed by the executive authority according to regulations so established, except so far as the judicial department has been authorized by treaty or by statute, or is required by the paramount law of the constitution.

*3 Hampton v. Mow Sun Wong, 426 U.S. 88, 101 n. 21, 96 S.Ct. 1895, 1904 n. 21, 48 L.Ed.2d 495 (1976) (quoting Fong Yue Ting v. United States, 149 U.S. 698, 713, 13 S.Ct. 1016, 1022, 37 L.Ed. 905 (1893)) (emphasis added). Thus, even where Congress does not authorize judicial review of actions concerning immigration, Congressional and executive power over immigration "is, of course, subject to judicial intervention under the paramount law of the constitution." Carlson v. Landon, 342 U.S. 524, 537, 72 S.Ct. 525, 533, 96 L.Ed. 547 (1952) (internal quotations omitted).

The question of whether INA § 242(b)(9) divests district courts of § 2241 habeas jurisdiction is a difficult one, implicating countless constitutional issues including the extent of Congressional authority over immigration and the jurisdiction over the lower federal courts. Despite the language of INA § 242(b)(9), statements in Fong Yue Ting and other Supreme Court decisions suggest that district courts may ultimately retain some limited constitutional habeas jurisdiction to challenge the validity of INS detention. The court will therefore examine the merits of Petitioner's arguments to see if she raises any colorable constitutional claims.

IV. Discussion

Petitioner does not dispute that the mandatory detention provisions of INA § 236(c) apply to her case and require the INS to detain her without bond or parole. [FN2] Her sole contention is that the denial of an individualized bond determination violates principles of substantive and procedural Due Process.

FN2. Petitioner does not dispute that the Transition Period Custody Rules (TPCR) do not apply to her since the INS commenced removal proceedings after October

1999 WL 803898                                                                      **Page 22**
**(Cite as: 1999 WL 803898, \*3 (S.D.Cal.))**

9, 1998.

In response, Respondent argues that the Petitioner's arguments lack merit because (1) Petitioner has no constitutional right to be paroled into the United States because she was apprehended upon entry to the United States; and because (2) even if the court reaches Petitioner's constitutional challenge, INA § 236(c) is constitutional. The court will address each of the parties' arguments in turn.

a. Petitioner's Status as an "Arriving" Alien

Respondent argues that Petitioner has no constitutional right to be paroled into the United States pending her removal proceedings because the federal government took her into custody as an alien entering the United States. Respondent argues that Petitioner's status as an "arriving" alien significantly diminishes her constitutional status and eliminates any constitutional entitlement she may have had to an individualized bond determination. In response, Petitioner argues that she should not be considered an "arriving" alien because she had a long period of residence in the United States prior to her March 1998 arrest.

Petitioner's arguments are undermined by the Supreme Court's decision in Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 73 S.Ct. 625, 97 L.Ed. 956 (1953) ("Mezei"). The alien in Mezei lived in the United States for 25 years until he took a 19-month trip to Hungary to visit a dying relative. Upon return to the United States, the Attorney General detained and confined him and sought to exclude him as a threat to national security. When no country would take him, the government confined him at Ellis Island for over 21 months. Mezei argued that his continued detention violated due process.

**\*4** The Supreme Court rejected these arguments by drawing the sharp distinction between "aliens who have once passed through our gates, even illegally," who are entitled to Due Process protections, and those "on the threshold of initial entry," who "stand[ ] on a different footing." Id. at 212, 73 S.Ct. at 629. Those in the latter category, the Court declared, are entitled to virtually no Due Process protection. "Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." Id. (quoting United States ex rel. Knauff v. Shaughnessy, 338 U.S. 537, 544, 70 S.Ct. 309, 313, 94 L.Ed.2d 317 (1950)). As for Mezei's continued detention at Ellis Island, the Court held that it did not "deprive him of any statutory

or constitutional right." Id. at 215, 73 S.Ct. at 631.

More recently, the Ninth Circuit reaffirmed Mezei and held that an alien entering the United States had no constitutional right to be free from detention, even for an extended period of time. Barrera-Echavarria v. Rison, 44 F.3d 1441, 1449 (9th Cir.1995) (en banc). The court noted the long line of Supreme Court cases recognizing the validity of detaining aliens pending deportation and stated that cases such as Mezei suggest that "excludable aliens simply enjoy no constitutional right to be paroled into the United States, even if the only alternative is prolonged detention." Id. at 1450. [FN3]

> FN3. The Ninth Circuit in Barrera-Echavarria suggested that the Mezei holding and reasoning may not apply to cases of "indefinite" or "permanent" detention. 44 F.3d at 1450. This case, however, does not implicate concerns of indefinite detention since there is no suggestion that Petitioner cannot return to Mexico if the INS orders her removed from the United States.

Although recent amendments to the federal immigration statutes have eliminated the statutory distinction between "exclusion" and "deportation," the constitution continues to draw a distinction between resident aliens and aliens who seek admission to the United States. [FN4] Under Mezei, the government may automatically confine those in the latter category, such as Petitioner, without offending the constitution.

> FN4. The Supreme Court in Rosenberg v. Fleuti, 374 U.S. 449, 462, 83 S.Ct. 1804, 10 L.Ed.2d 1000 (1963) held that "an innocent, casual, and brief excursion" by a resident alien into a foreign country would not convert the returning alien into an "excludable" alien under the INA. However, the BIA recently held that Congress legislatively overruled the Fleuti doctrine when it enacted IIRIRA. In re Collado, Int. Dec. 3333, 1998 WL 95929 (BIA 1998).

Although it is unclear how long Petitioner was in Mexico before attempting to reenter the United States, it is undisputed that Petitioner was apprehended at the border in March 1998 while attempting to smuggle 42.5 pounds of marijuana into the United States. Petitioner's apprehension for a criminal act at the border transmuted her constitutional status from a permanent resident into an arriving alien. [FN5] The government can therefore confine Petitioner without a bond hearing notwithstanding the fact that she previously enjoyed a long period of permanent residence in the United States. Mezei, 345 U.S. at 215, 73 S.Ct. at 631.

FN5. Petitioner has been under the custody and supervision of the federal government continuously since her March 1998 arrest notwithstanding that she was paroled into the United States during criminal proceedings. Cf. Carlson v. Landon, 342 U.S. 524, 547, 72 S.Ct. 525, 538, 96 L.Ed. 547 (1952) ("When a prisoner is out on bond he is still under court control, though the bounds of his confinement are enlarged.").

b. Petitioner's Constitutional Challenge to INA § 236(c)

Even assuming Petitioner enjoyed the full Due Process protections afforded resident aliens, the court nonetheless finds that her constitutional challenge to the mandatory detention provisions of INA § 236(c) lacks merit. Petitioner argues that "[i]n creating an irrebuttable presumption that all non-citizens with certain convictions require mandatory detention, the INS is depriving individuals of their liberty in violation of substantive and procedural due process." (See Pet. at 7). Respondent counters by arguing that Petitioner has failed to cite any authority supporting her position that she is constitutionally entitled to bail pending removal proceedings. (See Return at 7).

1. Substantive Due Process--Legal Standard

*5 Federal courts have long recognized that the Due Process Clause prevents governmental interference with those fundamental rights "implicit in the concept of ordered liberty." Palko v. Connecticut, 302 U.S. 319, 325-26, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937). The simplest example of such a right is the freedom from bodily restraint, a right so fundamental that it "has always been at the core of the liberty protected by the Due Process Clause ..." Foucha v. Louisiana, 504 U.S. 71, 80, 118 S.Ct. 1780, 1785, 118 L.Ed.2d 437 (1992); accord United States v. Salerno, 481 U.S. 739, 750, 107 S.Ct. 2095, 2103, 95 L.Ed.2d 697 (1989) (noting "the individual's strong interest in liberty."). Once government action infringes upon a "fundamental" right, the court will strike down the offending act or statute unless the infringement is narrowly tailored to serve a compelling governmental interest. Reno v. Flores, 507 U.S. 292, 302, 113 S.Ct. 1439, 1449, 123 L.Ed.2d 1 (1993) ("Flores" ). If the right at issue is not "fundamental," however, the court will uphold the act or statute so long as it is rationally related to a legitimate governmental interest. Washington v. Glucksberg, 521 U.S. 702, 728, 117 S.Ct. 2258, 2271, 138 L.Ed.2d 772 (1997); Williamson v. Lee Optical of Oklahoma, 348 U.S. 483, 487-88, 75 S.Ct. 461, 464, 99 L.Ed. 563 (1955).

The Supreme Court has admonished federal courts that a due process analysis must always "begin with a careful description of the asserted right, for "[t]he doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field." ' Flores, 507 U.S. at 302, 113 S.Ct. at 1449 (quoting Collins v. Harker Heights, 503 U.S. 115, 125, 112 S.Ct. 1061, 1068, 117 L.Ed.2d 261 (1992)) (alteration in original).

2. Defining the Right

Petitioner contends that INA § 236(c) is unconstitutional, both on its face and as applied to her, because it implicates her most basic and vital right to freedom from physical restraint or confinement. (See Pet. at 8-11). She contends that mandatory detention deprives her of the opportunity to show that she is neither a flight risk nor a danger to the community.

The court disagrees with Petitioner's definition of her alleged liberty interest and finds her situation analogous to that presented in Parra v. Perryman, 172 F.3d 954 (7th Cir.1999). The alien in Parra was convicted of an aggravated felony and detained by the INS pending removal from the United States. Parra, like Petitioner, brought a § 2241 habeas action contending that the mandatory detention provisions of INA § 236(c) violated his right to liberty guaranteed by Due Process. The court rejected this argument, stating:

Persons subject to § 1226(c) have forfeited any legal entitlement to remain in the United States and have little hope of clemency. Before IIRIRA bail was available to persons in Parra's position as a corollary to the possibility of discretionary relief from deportation; now that this possibility is so remote, so too is any reason for release pending removal. Parra's legal right to remain in the United States has come to an end. An alien in Parra's position can withdraw his defense of the removal proceeding and return to his native land, thus ending his detention immediately. He has the keys in his pocket. A criminal alien who insists on postponing the inevitable has no constitutional right to remain at large during the ensuing delay, and the United States has a powerful interest in maintaining the detention in order to ensure that removal actually occurs.

*6 Parra, 172 F.3d at 958 (emphasis in original). Since Parra had virtually no chance of remaining in the United States at the conclusion of his removal proceedings, the court held that Parra's due process

1999 WL 803898                                                    **Page 24**
**(Cite as: 1999 WL 803898, *6 (S.D.Cal.))**

interest was not "liberty in the abstract, but liberty in the United States by someone no longer eligible to live at liberty in this country but eligible to live at liberty in his native land." Id. (emphasis in original). [FN6]

> FN6. The Seventh Circuit also noted that Parra's case did not present problems of indefinite confinement or detention since the alien's native land, Mexico, accepts return of its citizens. Parra, 172 F.3d at 957.

The court finds the reasoning of Parra persuasive. The decision recognizes that detained aliens with little chance of remaining legally in the United States lack a liberty interest cognizable under the Due Process Clause. The strength of an alien's due process liberty interest therefore depends on the likelihood that the alien will be permitted to legally remain in the United States after the conclusion of removal proceedings. Where an alien commits an aggravated felony, she renders herself immediately removable from the United States and forfeits any discretionary form of relief from removal.

Here, Petitioner has made no showing that she is likely to remain in the United States after the close of her removal proceedings. A jury found Petitioner guilty of knowingly importing 42.5 pounds of marijuana into the United States-an extremely serious controlled substance offense that easily qualifies as an "aggravated felony" under the INA. See 8 U.S.C. § 1101(a)(43)(B) ("The term 'aggravated felony' means ... illicit trafficking in a controlled substance ..."); 21 U.S.C. § 812, Sch. I(c)(10) (definition of controlled substance includes marijuana); 21 U.S.C. § 802(16); cf. United States v. Estrada-Torres, 179 F.3d 776 (9th Cir.1999) (holding that violation of California statute prohibiting importation of marijuana was properly classified as "aggravated felony" under INA § 101(a)(43), allowing for sentencing enhancement). Petitioner's felony conviction thus renders her ineligible for the only form of discretionary relief she seeks, "cancellation" of removal under INA § 240A [8 U.S.C. § 1229b]. See 8 U.S.C. §§ 1229b(a), 1229b(b)(1)(C) (cancellation of removal unavailable to aggravated felons). [FN7] Even assuming Petitioner was eligible for some form of discretionary relief, she has made no showing that she will likely receive it, particularly in light of the serious nature of the crime for which she was convicted. [FN8] The court therefore holds that Petitioner's Due Process liberty interest is far less from "fundamental," and is no stronger than that of the alien in Parra.

> FN7. Although the INS initially charged Petitioner with removability due to her controlled substance conviction,

it appears that the INS has realized that her marijuana importation offense also qualifies as an "aggravated felony" under the INA. (See Pet. at 10:16-19). The immigration judge's April 21, 1999 notes indicate doubt as to whether Section 240A cancellation is available to Petitioner. (See Resp. Exh. 22).

> FN8. Petitioner also contends that she seeks to avoid removal from the United States by seeking protection of Deferral of Removal pursuant to the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment. (See Traverse at 4:14-18). Petitioner fails, however, to offer any specific factual allegations suggesting that she may qualify for this form of relief from removal.

3. Applying the Scrutiny

Having found that Petitioner has no fundamental right to liberty within the United States during her removal proceedings, the court must apply the more deferential "rational basis" test. Williamson, 348 U.S. at 487-88, 75 S.Ct. at 464. Rational basis requires even more deference where, as here, the challenged statute concerns immigration. The Supreme Court has bestowed Congressional immigration statutes with the strongest presumption of constitutional validity. In no other area of law has the Court employed more sweeping and unequivocal language suggesting that legislative and executive authority over immigration is virtually plenary. The Court has stated that matters involving immigration are "so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference. Harisiades v. Shaughnessy, 342 U.S. 580, 588-89, 72 S.Ct. 512, 519, 96 L.Ed. 586 (1952). The principle that formulation of policies pertaining to immigration is entrusted exclusively to Congress "has become about as firmly embedded in the legislative and judicial tissues of our body politic as any aspect of our government." Galvan v. Press, 347 U.S. 522, 531, 74 S.Ct. 737, 743, 98 L.Ed. 911 (1954); accord Flores, 507 U.S. at 305-306, 113 S.Ct. at 1449 ("[T]he responsibility for regulating the relationship between the United States and our alien visitors has been committed to the political branches of the Federal Government. Over no conceivable subject is the legislative power of Congress more complete.") (internal citations omitted). These oft-repeated general principles guide judicial review of any immigration statute [FN9] and require the court to uphold the statute so long as it "meet[s] the (unexacting) standard of rationally advancing some legitimate governmental purpose ..." Id. at 306, 113 S.Ct. at 1449.

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

FN9. The Supreme Court has only twice struck down congressional immigration statutes. See INS v. Chadha, 462 U.S. 919, 103 S .Ct. 2764, 77 L.Ed.2d 317 (1983) (congressional statute authorizing one House of Congress to "legislatively veto" Attorney General's decision to suspend deportation in individual cases violated separation of powers); Wong Wing v. United States, 163 U.S. 228, 16 S.Ct. 977, 41 L.Ed. 140 (1896) (congressional statute subjecting Chinese alien illegally residing in the United States to imprisonment and hard labor held unconstitutional where statute did not require judicial finding of guilt).

*7 INA § 236(c) clearly passes constitutional muster for at least three reasons. First, Congress could rationally have believed that aliens who commit aggravated felonies present a danger to the community. As one court noted, aliens involved in drug trafficking pose a significant threat the society's health and welfare. Diaz-Zaldierna v. Fasano, 43 F.Supp.2d 1114, 1120 (S.D.Cal.1999) (Moskowitz, J.).

Second, Congress could rationally believe that aliens facing removal are likely to abscond if released on bail. The Parra decision, for example, cited Department of Justice statistics indicating that 90% of aliens facing removal from the United States abscond once released on bail. 172 F.3d at 956 (citing 62 Fed.Reg. 10,312, 10,323 (1997)). The Seventh Circuit indicated that this rate exceeds the abscond rate for criminal defendants released on bond. Id. at 958.

Third, Congress could rationally have concluded that denying bail to an alien certain to face removal from the United States eliminates the incentive to indefinitely prolong removal proceedings. An alien released on bail with little chance of remaining in the United States has a strong incentive to delay administrative proceedings by filing frivolous motions and appeals. Placing such an alien in mandatory detention reduces this incentive, furthering congressional policy of expeditiously removing criminal aliens from the United States.

The court therefore concludes that INA § 236(c) comports with Due Process and does not offend the constitution. [FN10]

FN10. Since Petitioner lacks a substantive due process liberty interest, her procedural due process arguments require no comment. See American Manuf. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, ____, 119 S.Ct. 977, 989, 143 L.Ed.2d 130 (1999) (citations and internal quotation marks omitted) ("The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in property or liberty. Only after finding the deprivation of a protected interest

do we look to see if the State's procedures comport with due process."); Sargeant v. Dixon, 130 F.3d 1067, 1070 (D.C.Cir.1997) ("Absent an underlying property or liberty interest, therefore, one has no entitlement to procedural due process and hence no 'right to be heard." ").

4. Applicability of The Salerno Framework

Petitioner urges the court to apply the Due Process framework for pretrial criminal detention articulated by the Supreme Court in United States v. Salerno, 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). Salerno involved a challenge to provisions of the Bail Reform Act that authorized pretrial detention of a criminal defendant upon a showing that the defendant posed a danger to the community. The Court held that evaluating the statute's constitutionality required a two step process. First, the court must determine whether the statute advances a regulatory or punitive purpose. Id. at 746, 107 S.Ct. at 2101. Second, if the statute is deemed regulatory it will be upheld unless it appears "excessive" in relation to its purpose. Id.

Applying this framework to the Bail Reform Act, the Court upheld the statute reasoning that it had a regulatory purpose and was narrowly tailored to prevent criminal defendants from committing additional crimes. The Court emphasized that the statute included numerous procedural safeguards, including a "full-blown adversary hearing" that required the government to show by "clear and convincing evidence" that a criminal defendant's pretrial release would pose a danger to the community. Id. at 749-51, 107 S.Ct. at 2103.

Petitioner and Respondent cite district court cases that have evaluated INA § 236(c) under Salerno with differing results. Petitioner relies on Martinez v. Greene, 28 F.Supp.2d 1275 (D.Colo.1998), where the court held that INA § 236(c) had a regulatory purpose but was unconstitutionally "excessive" because it removed the Attorney General's discretion to make individual determinations. Id. at 1282. Respondent, on the other hand, cites Diaz-Zaldernia v. Fasano, 43 F.Supp.2d 1114 (S.D.Cal.1999), where the court held that INA § 236(c) passed constitutional muster because mandatory detention pending removal was a regulatory, reasonable, and nonexcessive means to carry out congressional immigration policy. [FN11]

FN11. See also Galvez v. Lewis, 56 F.Supp.2d 637, 1999 WL 547926 (E.D. Va. Jul 7, 1999) (following Diaz-Zaldernia and upholding INA § 236(c)); Van

Ecton v. Beebe, 49 F.Supp.2d 1186 (D.Or.1999) (following Martinez and holding INA § 236(c) unconstitutional).

**\*8** If the court accepted Petitioner's argument that Salerno provided the proper analytical framework, could it conceivably agree with the Martinez court and hold INA § 236(c) unconstitutional. In Foucha v. Louisiana, 504 U.S. 71, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992), the Supreme Court struck down a Louisiana state law that required criminal defendants acquitted by reason of insanity to be automatically committed to state psychiatric institutions, regardless of whether they were insane at the time of acquittal. Relying on Salerno, the Court found the statute constitutionally defective because it placed no durational limitation on confinement and did not require the state to show that the person was insane or dangerous. Id. at 82-83, 112 S.Ct. at 1786-87.

Assuming the Salerno reasoning applied to this case, INA § 236(c) fares even worse than the Louisiana statute struck down in Foucha. The statute mandates, automatically and without exception, the detention of any alien convicted of an aggravated felony or a serious controlled substance violation. It does not allow an alien to prove that she is neither a flight risk nor a danger to the community. It summarily denies bail for several broadly defined classes of aliens and precludes the Attorney General from consideration of individual circumstances. INA § 236(c) is, therefore, clearly excessive under Salerno and unconstitutional under Foucha.

However, the court respectfully disagrees with the assumption made by Martinez and Diaz-Zaldernia: that Salerno provides the appropriate analytical framework for evaluating the constitutionality of INA § 236(c). As

Salerno recognized, detaining a presumptively innocent criminal defendant before a judicial finding of guilt deprives the person of a fundamental due process right to liberty, triggering the highest judicial scrutiny. "In our society liberty is the norm," the Court declared, "and detention prior to trial or without trial is the carefully limited exception." Salerno, 481 U.S. at 755, 107 S.Ct. at 2105. The Court's reasoning in Salerno therefore presumes the existence of a fundamental substantive Due Process liberty interest. If the party challenging detention has no such due process interest, the Salerno framework should not apply.

The analysis in Martinez and Diaz-Zaldernia suffers from failing to perform the most crucial step in the substantive due process calculus-precisely defining the right infringed by government action. Flores, 507 U.S. at 302, 113 S.Ct. at 1449. An alien who will almost certainly face removal does not stand on the same footing as a criminal defendant who has not yet been found guilty of a crime. See Parra, 172 F.3d at 958. Unlike the defendant in Salerno, Petitioner has already been convicted for an aggravated felony, an offense that virtually guarantees her removal from the United States. The court therefore holds that the analysis in Salerno does not apply where, as here, the alien lacks a cognizable fundamental Due Process interest under the Fifth Amendment.

V. Conclusion and Order

**\*9** For the foregoing reasons, the court DENIES the petition for a writ of habeas corpus. The Clerk of Court shall close the district court case file.

IT IS SO ORDERED.

END OF DOCUMENT

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

*END*END*END*END*END*END*END*END*END*END*END*END*END*END*END*END*END*END*END*

## 1224624 - PADGETT,MARY

| | | |
|---|---|---|
| Date and Time Printing Started: | 08/22/00 | 09:30:35 am (Central) |
| Date and Time Printing Ended: | 08/22/00 | 09:30:54 am (Central) |
| Offline Transmission Time: | | 00:00:19 |
| Number of Requests in Group: | 4 | |
| Number of Lines Charged: | 1613 | |

*END*END*END*END*END*END*END*END*END*END*END*END*END*END*END*END*END*END*END*

Citation                    KeyCite History        Rank 1 of 1        Database
Interim Decision (BIA) 3398                                          FIM-BIA
1999 WL 339053 (BIA)

**(Publication page references are not available for this document.)**

United States Department of Justice
Board of Immigration Appeals

IN RE Samuel JOSEPH, Respondent
File A90 562 326 - York
Decided May 28, 1999

(1) For purposes of determining the custody conditions of a lawful permanent
resident under section 236 of the Immigration and Nationality Act, 8 U.S.C. §
1226 (Supp. II 1996), and 8 C.F.R. § 3.19(h)(2)(ii) (1999), a lawful permanent
resident will not be considered "properly included" in a mandatory detention
category when an Immigration Judge or the Board of Immigration Appeals finds, on
the basis of the bond record as a whole, that it is substantially unlikely that
the Immigration and Naturalization Service will prevail on a charge of
removability specified in section 236(c)(1) of the Act.

(2) Although a conviction document may provide the Service with sufficient
reason to believe that an alien is removable under one of the mandatory
detention grounds for purposes of charging the alien and making an initial
custody determination, neither the Immigration Judge nor the Board is bound by
the Service's decisions in that regard when determining whether an alien is
properly included within one of the regulatory provisions that would deprive the
Immigration Judge and the Board of jurisdiction to redetermine the custody
conditions imposed on the alien by the Service. Matter of Joseph, Interim
Decision 3387 (BIA 1999), clarified.

(3) When an Immigration Judge's removal decision precedes the determination,
pursuant to 8 C.F.R. § 3.19(h)(2)(ii), whether an alien is "properly included"
in a mandatory detention category, the removal decision may properly form the
basis for that determination.

(4) An automatic stay of an Immigration Judge's release order that has been
invoked by the Service pursuant to 8 C.F.R. § 3.19(i)(2) is extinguished by the
Board's decision in the Service's bond appeal from that release order.

Sandra L. Greene, Esquire, Philadelphia, Pennsylvania, for respondent

for the Immigration and Naturalization Service
Jeffrey T. Bubier
Assistant District Counsel

Before: Board En Banc: DUNNE, Vice Chairman; HEILMAN, HOLMES, HURWITZ, FILPPU,
COLE, MATHON, JONES, GRANT, SCIALABBA, and MOSCATO, Board Members. Concurring
and Dissenting Opinion: SCHMIDT, Chairman; joined by VACCA, VILLAGELIU,
ROSENBERG, and GUENDELSBERGER, Board Members.

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

Interim Decision (BIA) 3398
**(Publication page references are not available for this document.)**

FILPPU, Board Member:

On May 19, 1999, the Board issued an order which dismissed the Immigration and
Naturalization Service's appeal from the Immigration Judge's January 20 and 22,
1999, bond orders releasing the respondent on his own recognizance. Our order
informed the parties that this decision explaining the reasons for the order
would be forthcoming.

## I. THE ISSUES AND SUMMARY

Our jurisdiction in this timely Service appeal is pursuant to 8 C.F.R. §
3.1(b)(7) (1999). See also Matter of Joseph, Interim Decision 3387, at 13- 14
(BIA 1999); 8 C.F.R. §§ 3.19(h)(2)(ii), 236.1(c)(11), (d)(3) (1999). Today, we
explain the import of our ruling in Matter of Joseph, supra, in light of the
Service's arguments in this bond appeal. We also address the question of when an
Immigration Judge will have jurisdiction to set bond for a lawful permanent
resident who has been charged by the Service with a ground of removability that
would otherwise require the alien's mandatory detention pending an
administratively final order of removal.

As explained below, the Immigration Judge may make a determination on whether
a lawful permanent resident "is not properly included" in a mandatory detention
category, in accordance with 8 C.F.R. § 3.19(h)(2)(ii), either before or after
the conclusion of the underlying removal case. If this threshold bond decision
is made after the Immigration Judge's resolution of the removal case, the
Immigration Judge may rely on that underlying merits determination.

If the Immigration Judge addresses whether the permanent resident is properly
included in a mandatory detention category prior to completion of the case in
chief, the Immigration Judge must have very substantial grounds to override the
Service's decision to charge the alien with a ground that subjects the alien to
detention. Thus, in this context, a lawful permanent resident will not be
considered properly included in a mandatory detention category only when an
Immigration Judge is convinced that the Service is substantially unlikely to
establish, at the merits hearing, the charge or charges that subject the alien
to mandatory detention.

In either situation, the Immigration Judge's bond ruling as to whether the
alien is "properly included" in a mandatory detention category is subject to the
Service's invocation of the "automatic stay" discussed in our prior ruling in
this case.

## II. FACTS AND PROCEDURAL HISTORY

The respondent, a native and citizen of Haiti, was admitted as a lawful
permanent resident in 1989. The respondent was convicted of the offense of
"obstructing and hindering," a crime under the common law of Maryland. The
charge to which the respondent pleaded guilty asserts that he "did intentionally
and knowingly obstruct and hinder a police officer . . . in the performance of
the (police officer) victim's duties." The respondent received a 1-year
sentence. A statement appended to the criminal charging document asserts that

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

Interim Decision (BIA) 3398
**(Publication page references are not available for this document.)**

the respondent, after departing his residence in a vehicle, was chased by a police officer and was finally apprehended in Delaware after jumping from his moving vehicle. It is not clear why the respondent was being pursued.

It appears that the respondent was taken into Service custody and removal proceedings were commenced in November 1998, charging that he was subject to removal under section 237(a)(2)(A)(iii) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A)(iii) (Supp. II 1996), as an alien who has been convicted of an aggravated felony as defined in section 101(a)(43)(S) of the Act, 8 U.S.C. § 1101(a)(43)(S) (Supp. II 1996) (obstruction of justice). The Immigration Judge, however, terminated the underlying removal proceedings on January 20, 1999, after deciding that the respondent's conviction does not qualify as an aggravated felony.

That same day the Immigration Judge issued an oral order in bond proceedings releasing the respondent from custody. The Immigration Judge followed his January 20, 1999, oral order with a written release order, dated January 22, 1999. The Service timely appealed both the Immigration Judge's decision terminating the respondent's removal proceedings and the Immigration Judge's order releasing the respondent on his own recognizance. The Service obtained an automatic stay of the release order during the pendency of its bond appeal, in accordance with our earlier ruling in this case. Matter of Joseph, supra. At present, we only address the Service's appeal from the Immigration Judge's release order and thereby resolve the bond appeal.

### III. THE SERVICE'S POSITION

The Service maintains that the respondent's conviction is for an aggravated felony, that he is therefore ineligible for release, and that the Immigration Judge lacked jurisdiction to redetermine the custody conditions imposed by the Service. The Service further argues that the Immigration Judge's decision in the respondent's removal proceedings, finding that the respondent is not an aggravated felon, is an improper basis for making a bond determination. The Service points out that it has timely appealed the Immigration Judge's removal decision and that it could prevail in its merits appeal. It argues that releasing an alien charged as an aggravated felon would be inconsistent with congressional intent in such circumstances.

Nevertheless, the Service has only provided a brief overview of its arguments on the underlying merits of the removal case, and it declines to "burden these bond proceedings with a complete exposition of its position on the merits." According to the Service, the respondent remains ineligible for release because his conviction record provided the requisite "reason to believe" that he is removable as an aggravated felon, in accordance with our earlier ruling in this case. See Matter of Joseph, supra, at 10 (discussing the "reason to believe" language contained in the regulatory history of the current bond regulations).

### IV. THE GOVERNING LAW

The provisions governing the respondent's detention, pending an administratively final order in removal proceedings, are section 236 of the Act,

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

Interim Decision (BIA) 3398
(Publication page references are not available for this document.)

8 U.S.C. § 1226 (Supp. II 1996), and the regulations in 8 C.F.R. §§ 3.19 and 236.1. The statute prescribes mandatory detention for certain aliens, including those who are deportable by reason of having committed aggravated felonies. Section 236(c)(1)(B) of the Act. An exception, pertaining to cases involving witness protection, does not apply here. Section 236(c)(2) of the Act.

The regulations generally do not confer jurisdiction on Immigration Judges over custody or bond determinations respecting those aliens subject to mandatory detention, such as aggravated felons. 8 C.F.R. § 3.19(h)(2)(i)(D). The regulations, nevertheless, specifically allow an alien to seek a determination from an Immigration Judge "that the alien is not properly included within" certain of the regulatory provisions which would deprive the Immigration Judge of bond jurisdiction, including the one at issue here. 8 C.F.R. § 3.19(h)(2)(ii). We must examine the import of this latter provision given the present posture of this case. [FN1]

In a case such as this, the structure of the bond regulations means that the Immigration Judge's jurisdiction over custody issues is dependent on the answer to the very same question that underlies the charge of removability in the case in chief. In other words, if the respondent is removable as an aggravated felon, the Immigration Judge lacks any bond jurisdiction. Conversely, the Immigration Judge would have authority to redetermine custody conditions if the respondent is not removable as an aggravated felon.

## V. THE REMOVAL DECISION MAY BE A BASIS FOR THE BOND RULING

Given the regulatory scheme, we find no basis to the Service's contention that the Immigration Judge should not be able to use his ruling on the underlying merits of the removal proceedings as the basis for his finding of jurisdiction over the respondent's bond claim. Nothing in the regulations prohibits such action by the Immigration Judge, and the regulatory structure would actually seem to encourage the approach taken by the Immigration Judge, because the essential question is identical in both contexts.

The Immigration Judge could have made a threshold assessment in the bond context of whether the respondent's conviction was properly classified by the Service as an aggravated felony. However, the Immigration Judge elected first to complete the removal hearing. The Immigration Judge found that the respondent had not been convicted of an aggravated felony, the only charge of removability, and terminated the removal proceedings in the respondent's favor. Relying on his removal finding, the Immigration Judge then made a determination in bond proceedings that the respondent was not subject to mandatory detention and ordered his release. Nothing in this sequence of events violates the structure or spirit of the regulations, given that the Service's appeal of the removal order meant that there was no final order in place. See 8 C.F.R. § 236.1(d) ("Once a removal order becomes administratively final, determinations regarding custody and bond are made by the district director").

## VI. MATTER OF JOSEPH EXPLAINED

We also reject the Service's contention that the same basis for its initial

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

Interim Decision (BIA) 3398
(Publication page references are not available for this document.)

charge of removability, which we found sufficient for purposes of the automatic stay as well, is adequate in this case to provide the needed "reason to believe" that the respondent is an aggravated felon when we reach the substance of the bond appeal. In this respect, the Service's reading of our decision in Matter of Joseph, supra, is erroneous.

What was decided in Matter of Joseph, supra, was the question whether an alien remains "subject to" section 236(c)(1) for automatic stay purposes after the Immigration Judge has decided that he is not subject to mandatory detention. 8 C.F.R. § 3.19(i)(2). The Service quotes language from that decision stating that "the respondent's conviction record provided the Service with the requisite .reason to believe' that the respondent was removable as an aggravated felon, and the respondent thus became .subject to' section 236(c)(1) of the Act when charged with removability under section 237(a)(2)(A)(iii)." Id. at 10. The Service appears to argue that the "reason to believe" which led it to bring the aggravated felony charge against the respondent is sufficient to control for bond purposes until the final resolution of the underlying removal case. While the Service's position may often be correct as a practical matter in other cases, this is because the nature of many convictions quite clearly make aliens subject to mandatory detention. But that will not be true in all cases, and we do not find it to be true here.

To clarify what we said in Matter of Joseph, supra, the respondent's conviction record provided the Service with the requisite "reason to believe" that he had been convicted of an aggravated felony for purposes of charging and making the initial custody determination. However, the Service's decision in that regard is not unreviewable by the Immigration Judge or the Board in either the bond or the removal context. We found in Joseph that the automatic stay regulation was intended as a means for the Service to preserve the "status quo" of the district director's determination that the respondent must be detained, but only until we decide the Service's appeal from the Immigration Judge's release order. Matter of Joseph, supra, at 16.

The Service evidently misunderstands the discussion in our earlier decision of the regulatory history of the automatic stay provision, which provides that the Board retains full authority to accept or reject the Service's contentions in its bond appeal. See Procedures for the Detention and Release of Criminal Aliens by the Immigration and Naturalization Service and for Custody Redeterminations by the Executive Office for Immigration Review, 63 Fed. Reg. 27,441, 27,447 (1998); Matter of Joseph, supra, at 12. The Service's position fails to recognize either the Immigration Judge's or the Board's role in the detention review process, apparently viewing our authority as being confined to looking only to whether the Service had a basis for charging the respondent with removability under one of the grounds listed in section 236(c)(1) of the Act.

Our role in this appeal is, instead, to determine whether the Immigration Judge correctly found that the respondent was not properly included in the mandatory detention scheme. This requires consideration of the evidence and argument offered during the bond proceedings on this question and of the force of the Immigration Judge's reasoning. It is more than just a perfunctory review and ratification of the fact that the Service may have had a "reason to believe" the respondent was an aggravated felon at the time it began the proceedings.

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

Interim Decision (BIA) 3398
(Publication page references are not available for this document.)

## VII. THE INTERPRETATION OF 8 C.F.R. § 3.19(h)(2)(ii)

Our construction of the regulation at issue here flows directly from what we said in Matter of Joseph. Any presumption that the respondent is an aggravated felon based on his conviction record and the charge brought by the Service is insufficient, by itself, to control the outcome of the bond appeal if the record as a whole shows otherwise. In this regard, we understand that the very purpose of the regulation, 8 C.F.R. § 3.19(h)(2)(ii), is to provide an alien, such as the respondent, with the opportunity to offer evidence and legal authority on the question whether the Service has properly included him within a category that is subject to mandatory detention.

Here, the Immigration Judge was convinced by the respondent's arguments that his Maryland common law "obstructing and hindering" charge is not an aggravated felony. The Immigration Judge compared the Maryland case law argued by the respondent to federal law and agreed with the respondent that the elements of the crime, and the types of conduct which it includes, are not analogous to "obstruction of justice" as contemplated by the aggravated felony definition at section 101(a)(43)(S) of the Act.

The Service argues, however, that it has appealed the merits decision terminating removal proceedings. And it contends the following in its appeal brief: "If the Service turns out to be right, absent the Board's sustaining of the instant bond appeal, the respondent, an aggravated felon subject to mandatory custody, will have been released from custody. That is not the disposition envisioned by Congress in enacting the mandatory custody provision of section 236(c)."

But this case involves a lawful permanent resident who has been charged with only one ground of removability. Under our laws, the respondent would be allowed to reside and work in the United States, but for the pendency of the aggravated felony charge brought by the Service. And, as noted above, the bond regulations specifically accord a level of protection for aliens charged with grounds that would require mandatory detention. Those regulations allow for an independent assessment by an Immigration Judge and the Board, in the preliminary bond context, of whether the alien is "properly included" in a category subject to mandatory detention.

The mere fact that the Service has appealed in the underlying removal case, and in theory could prevail, cannot be sufficient, by itself, to require the reversal of the Immigration Judge in this bond appeal. If it were, there would seem to be little or no point to the regulatory provision that allows the Immigration Judge, and the Board on appeal, to make a determination on whether the alien is "properly included" in a mandatory detention category.

A determination in favor of an alien on this issue does not lead to automatic release. It simply allows an Immigration Judge to consider the question of bond under the custody standards of section 236(a) of the Act. Yet, under the Service's approach, an alien such as the respondent would seem to have no recourse to that ordinary bond provision, even in cases where the Service is wrong in its charge and will lose on appeal. As we explained in connection with our discussion of Matter of Joseph above, the regulation must have meaning beyond simply allowing for a perfunctory review of the basis for the Service's

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

Interim Decision (BIA) 3398
**(Publication page references are not available for this document.)**

charge. Indeed, the regulatory history indicates that this rule was intended to provide "for an individualized hearing on whether an alien in custody actually falls within a category of aliens subject to mandatory detention." 63 Fed. Reg. at 27,444 (emphasis added).

This, however, is a case of first impression, and the regulations do not spell out the precise role of an Immigration Judge or the Board in assessing, in the bond context, whether an alien is "properly included" in a mandatory detention category. Yet, this case also involves a lawful permanent resident. And, as we explain below, we find that the Service is substantially unlikely to establish the charge of deportability in its appeal of the underlying removal case. Under such circumstances, we find it inappropriate to continue to treat the respondent as an alien who is subject to mandatory detention, if we are to give meaningful life to the regulations allowing for an examination by Immigration Judges and the Board of this question. Thus, subject to the automatic stay provision, we determine that a lawful permanent resident will not be considered "properly included" in a mandatory detention category when an Immigration Judge or the Board is convinced that the Service is substantially unlikely to establish at the merits hearing, or on appeal, the charge or charges that would otherwise subject the alien to mandatory detention.

The Immigration Judge here issued his bond ruling after the conclusion of the removal case. As indicated above, the Immigration Judge was entitled to rely on that merits decision in making the related bond determination that the respondent was not properly included in a mandatory detention category.

The regulations, however, allow this determination to be made by the Immigration Judge at a very early stage of the overall proceedings. The Service is, of course, entitled to bring any charge it deems warranted in a given case. Importantly, as the Service points out, the statutory scheme envisions the detention of aliens subject to grounds such as the aggravated felony charge here. Consequently, the Immigration Judge must have very substantial grounds to override the custodial effect of the Service's charge in those cases where the Immigration Judge addresses whether the permanent resident is properly included in a mandatory detention category prior to completion of the merits hearing.

It follows from what we said in Matter of Joseph, supra, at 10, that the "reason to believe" that the alien "falls within a category barred from release," which led the Service to bring a particular charge, can often be expected to suffice until the Immigration Judge resolves the merits of the removal case, a resolution that frequently occurs speedily in cases involving detained criminal aliens. 63 Fed. Reg. at 27,444-45. But the Immigration Judge is able to examine the basis for that charge and make an independent determination whether the alien "actually falls within a category of aliens subject to mandatory detention." Id. at 27,444. In requiring that the Immigration Judge be convinced that the Service is substantially unlikely to prevail on its charge, when making this determination before the resolution of the underlying case, we provide both significant weight to the Service's "reason to believe" that led to the charge and genuine life to the regulation that allows for an Immigration Judge's reexamination of this issue.

In addition, we note that the bond regulations generally allow for great flexibility in making rulings on custody issues. For example, 8 C.F.R. § 3.19(d)

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

Interim Decision (BIA) 3398
(Publication page references are not available for this document.)

provides in part: "The determination of the Immigration Judge as to custody
status or bond may be based upon any information that is available to the
Immigration Judge or that is presented to him or her by the alien or the
Service."

Further, in assessing whether an alien is "properly included" in a mandatory
detention category during a bond hearing taking place early in the removal
process, the Immigration Judge must necessarily look forward to what is likely
to be shown during the hearing on the underlying removal case. Thus, for
example, the failure of the Service to possess a certified copy of a conviction
record shortly after taking an alien into custody would not necessarily be
indicative of its ability to produce such a record at the merits hearing. And
the same could be true of evidence tendered by the alien during an early bond
hearing.

## VIII. THE SERVICE'S PROSPECT FOR SUCCESS IN THE REMOVAL CASE

Turning to the bond record in this case, we do have evidence respecting the
respondent's conviction for "obstructing and hindering" under Maryland law. We
agree with the Immigration Judge that this evidence strongly indicates that the
respondent's conviction resulted from his actions to obstruct or hinder his own
arrest.

The Maryland case law relied upon by the Immigration Judge, Cover v. State,
466 A.2d 1276 (Md. 1983), reflects that the crime of obstructing and hindering
encompasses three types of offenses: (1) positive direct obstruction (i.e.
resisting one's own arrest), (2) passive direct obstruction (where a subject
refuses or fails to act as directed by a police officer), and (3) positive
indirect obstruction (where the police are not acting directly against the
subject, but are acting indirectly against another who has committed, or may
commit, a criminal offense, and the subject does an act which obstructs them in
their general duty to prevent or detect crime, intending to frustrate them in
the performance of that duty).

At least in this bond case, the Service has provided little to challenge the
Immigration Judge's determination that the respondent's offense is not correctly
classified as an aggravated felony. The Service cites to Matter of Batista-
Hernandez, Interim Decision 3321 (BIA 1997), as support for its position.
However, we agree with the Immigration Judge that, unlike Batista- Hernandez,
the respondent in the present case was seeking to evade his own arrest, rather
than obstructing the arrest of another. The Service's reliance on United States
v. John, 935 F.2d 644 (4th Cir. 1991), is likewise unpersuasive. This sentence
enhancement case indicates that mere flight from an arresting officer is not
sufficient, in itself, to warrant an adjustment of a defendant's offense level
under the obstruction of justice provision in the United States Sentencing
Guidelines in U.S.S.G. § 3C1.1 (1990). See 18 U.S.C.A. ch. 3, § 3C.1.1 (West
1996). The Service has also not addressed the Immigration Judge's reliance on
the Supreme Court's decision in United States v. Aguilar, 515 U.S. 593, 599
(1995), for the proposition that an "intent to influence judicial or grand jury
proceedings" is more the sort of activity constituting an "obstruction of
justice" under the Act than is the respondent's conviction for obstructing or
hindering his own arrest in a manner that does not appear to have endangered the

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

Interim Decision (BIA) 3398
(Publication page references are not available for this document.)

officer.

We do not purport to make a final ruling on whether the respondent's conviction falls within the aggravated felony provision of section 101(a)(43)(S). The possibility remains that the Service might offer some convincing argument in its merits appeal. However, it opted not to do so here. On the basis of this bond record, it appears that Maryland's "obstructing and hindering" law is divisible, encompassing the conduct of resisting one's own arrest. Even if some of the other categories of activities included in this crime might potentially be construed as obstruction of justice, we find that it is substantially unlikely that the offense of simply obstructing or hindering one's own arrest will be viewed as an obstruction of justice aggravated felony under section 101(a)(43)(S) of the Act for removal purposes. Consequently, we agree with the Immigration Judge that the respondent is not "properly included" in the category of aliens subject to mandatory detention for bond or custody purposes. 8 C.F.R. § 3.19(h)(2)(ii).

## IX. THE RELEASE ORDER

Our determination, in agreement with the Immigration Judge, that the respondent is not properly included in a mandatory detention category would not ordinarily end the bond inquiry. It simply means that the lawful permanent resident could be considered by the Immigration Judge for release under the general bond provisions of section 236(a) of the Act. In this case, however, the Service has not challenged the specific terms of the Immigration Judge's release order in its appeal brief.

Consequently, for the foregoing reasons, on May 19, 1999, we entered an order which extinguished the automatic stay that had attached upon the tendering of the Form EOIR-43 (Notice of INS Intent to Appeal Custody Redetermination) by the Service in this case. We now repeat that order for the sake of clarity.

ORDER: The appeal taken by the Service is dismissed.

FURTHER ORDER: The respondent shall be released pursuant to the terms of the Immigration Judge's January 22, 1999, bond order.

CONCURRING AND DISSENTING OPINION: Paul W. Schmidt, Chairman; in which Fred W. Vacca, Gustavo D. Villageliu, Lory D. Rosenberg, and John Guendelsberger, Board Members, joined

I respectfully concur in part and dissent in part.

I join entirely in the majority's rejection of the Immigration and Naturalization Service's appellate arguments and in the unanimous conclusion that, on this record, the Service is substantially unlikely to prevail on the merits of the aggravated felony charge. Therefore, I agree that the respondent is not properly included in the category of aliens subject to mandatory detention for bond or custody purposes.

However, I do not share the majority's view that the proper standard in a mandatory detention case involving a lawful permanent resident alien is that the Service is "substantially unlikely to prevail" on its charge. Matter of Joseph, Interim Decision 3398, at 10 (BIA 1999). Rather, the standard in a case such as the one before us should be whether the Service has demonstrated a likelihood of success on the merits of its charge that the respondent is removable because of

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

Interim Decision (BIA) 3398
(Publication page references are not available for this document.)

an aggravated felony.

Mandatory detention of a lawful permanent resident alien is a drastic step that implicates constitutionally-protected liberty interests. Where the lawful permanent resident respondent has made a colorable showing in custody proceedings that he or she is not subject to mandatory detention, the Service should be required to show a likelihood of success on the merits of its charge to continue mandatory detention. To enable the Immigration Judge to make the necessary independent determination in such a case, the Service should provide evidence of the applicable state or federal law under which the respondent was convicted and whatever proof of conviction that is available at the time of the Immigration Judge's inquiry.

The majority's enunciated standard of "substantially unlikely to prevail" is inappropriately deferential to the Service, the prosecutor in this matter. Requiring the Service to demonstrate a likelihood of success on the merits of its charge would not unduly burden the Service and would give more appropriate weight to the liberty interests of the lawful permanent resident alien. Such a standard also would provide more "genuine life to the regulation that allows for an Immigration Judge's reexamination of this issue," as referenced by the majority. Matter of Joseph, supra, at 10.

The Service's failure to establish a likelihood of success on the merits would not result in the release of a lawful permanent resident who poses a threat to society. Continued custody of such an alien would still be warranted under the discretionary criteria for detention.

In conclusion, mandatory detention should not be authorized where the Service has failed to demonstrate a likelihood of success on the merits of its charge. Consequently, while I am in complete agreement with the decision to release this lawful permanent resident alien, and I agree fully that the Service is substantially unlikely to prevail on the merits of this aggravated felony charge, I respectfully dissent from the majority's enunciation of "substantially unlikely to prevail" as the standard to be applied in all future cases involving mandatory detention of lawful permanent resident aliens.

FN1. 8 C.F.R. § 3.19(h)(2)(i) provides, in relevant part:
Upon expiration of the Transition Period Custody Rules set forth in section 303(b)(3) of Div. C. of Pub. L. 104-208, an immigration judge may not redetermine conditions of custody imposed by the Service with respect to the following classes of aliens:
(D) Aliens in removal proceedings subject to section 236(c)(1) of the Act (as in effect after expiration of the Transition Period Custody Rules) . . . .
Aliens convicted of aggravated felonies fall within section 236(c)(1) of the Act, taking them outside the bond and custody jurisdiction of Immigration Judges. Nevertheless, 8 C.F.R. § 3.19(h)(2)(ii) provides in part:
(W)ith respect to paragraphs (h)(2)(i)(C), (D), and (E) of this section, nothing in this paragraph shall be construed as prohibiting an alien from seeking a determination by an immigration judge that the alien is not properly included within any of those paragraphs.
Interim Decision (BIA) 3398, 1999 WL 339053 (BIA)
END OF DOCUMENT

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

Client Identifier:  **MEP**
Date of Request:  08/22/00
The Current Database is FSFIND

DMB:JJT:nz

## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JORGE ECHAVERRIA-TORO,                    :
                                          :
                    Petitioner,           :      No. 1:CV-00-1292
                                          :
          v.                              :
                                          :      (KANE, J.)
JANET RENO, ET AL.,                       :
                                          :
                    Respondents.          :

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.

That on this 22nd day of August, 2000, she served a copy of the attached

## EXHIBITS IN SUPPORT OF
## RESPONSE TO HABEAS CORPUS PETITION

by placing said copy in a postpaid envelope addressed to the person hereinafter named, at the places and addresses stated below, which is the last known addresses, and by depositing said envelope and contents in the United States Mail in Harrisburg, Pennsylvania.

Addressee:

          Jorge Echavarria-Toro, No. 58600
          YORK COUNTY PRISON
          3400 Concord Road
          York, Pennsylvania  17402

                              Naomi Zimmerman
                              Legal Secretary